UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TROY PAUL GIBSON,

       Plaintiff,

v.                                                                      Case No. 8:21-cv-1242-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

       Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## I.

### A.    Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 272-87, 290-91). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 124-27, 152-53, 158-61). Plaintiff then

_____

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

requested an administrative hearing (Tr. 169-70). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 59-103). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 36-58). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council granted (Tr. 1-9, 262-64). The Appeals Council adopted the ALJ's findings and conclusions regarding Plaintiff's disability (Tr. 4). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1966, claimed disability beginning December 30, 2016 (Tr. 39, 272, 278-79, 290).[2] Plaintiff obtained at least a high school education (Tr. 327). Plaintiff's past relevant work experience included work as a "laborer stores"; a cashier/checker; a security guard; a surveillance system monitor; a bartender; and a linen room house porter (Tr. 98-100, 328). Plaintiff alleged disability due to depression and insomnia (Tr. 326).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2022 and had not engaged in substantial gainful activity since December 30, 2016, the alleged onset date (Tr.

---

[2]  The ALJ's decision and the parties' Joint Memorandum indicate that Plaintiff alleged a disability onset date of December 30, 2016 (Tr. 39; Doc. 32). In the applications, however, Plaintiff stated that his alleged onset date was January 2, 2015 (Tr. 272, 278-79, 290). Since the parties do not dispute the ALJ's alleged onset date, the Court will use that date.

41). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: disorder of the right shoulder; affective/mood disorder; and bipolar disorder (Tr. 42). Notwithstanding the noted impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 42). The ALJ then found that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff could only occasionally reach overhead with his dominant right upper extremity; could never climb ropes, ladders, or scaffolds; could frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; was limited to simple tasks typical of unskilled occupations with no production-rate pace work; and was capable of only occasional interaction with supervisors, coworkers, and the public (Tr. 43). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 44).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a "laborer stores" and linen room house porter (Tr. 48). Given Plaintiff's background and RFC, the VE testified that Plaintiff could also perform other jobs

existing in significant numbers in the national economy, such as a cleaner/housekeeper/janitor; a paper pattern folder; and a laundry aide (Tr. 49). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 49-50). On review, the Appeals Council found that Plaintiff met the earnings requirements on December 30, 2016 through March 31, 2022 (Tr. 6). The Appeals Council adopted the ALJ's findings and conclusions (Tr. 4-7).[3]

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520,

---

[3] This Order refers to the administrative decision as the Appeals Council's decision or the Commissioner's decision rather than the ALJ's decision because the Appeals Council issued the final decision in this matter and adopted all the ALJ's findings and conclusions.

416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings,

no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the Appeals Council erred by failing to provide substantial evidence for the RFC assessment. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the

RFC, therefore, the ALJ must consider the medical opinions[4] in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

---

[4] The regulations define "medical opinion" as a statement from a medical source about what the claimant can still do despite his or her impairment(s) and whether he or she have one or more impairment-related limitations or restrictions in the abilities listed in the following domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.913(2).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.[5] *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must establish evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the SSA determines that an underlying physical or mental impairment could reasonably

---

[5] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n). Additionally, the regulations define "objective evidence" to include evidence obtained from the application of medically acceptable clinical diagnostic techniques and laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Moreover, the regulations define "other evidence" to include evidence from medical sources, non-medical sources, and statements regarding a claimant's pain or other symptoms, including about treatment the claimant has received. See 20 C.F.R. § 416.929(c)(3).

be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995).

Under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 416.920c(a); *see Tucker v. Saul*, Case No. 4:19-CV-00759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 416.920c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting

explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 416.920c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Here, Plaintiff specifically argues that the Appeals Council's RFC determination is unsupported by substantial evidence because the Appeals Council rejected all of the medical opinions of record and inserted its own lay medical opinion. Although the Plaintiff accurately states that the Appeals Council found all

of the medical opinions unpersuasive, this Court finds that the decision is supported by substantial evidence.

The Appeals Council found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Appeals Council found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of these symptoms were not entirely consistent with the medical evidence and the other evidence in the record (Tr. 44). Specifically, the Appeals Council found that the objective medical evidence in the record did not support the severity of Plaintiff's alleged symptoms (Tr. 44).

Plaintiff's primary care provider, Bernadette Yalung-Almodiel, PAC, submitted several medical opinions regarding Plaintiff's functional capacity. Yalung-Almodiel opined that Plaintiff had moderate to marked to extreme limitations in all four areas of the paragraph B criteria (Tr. 495-97, 768-70). Yalung-Almodiel also opined that Plaintiff had extreme physical limitations and was unable to perform even sedentary full-time work (Tr. 764-65). The Appeals Council found these opinions to be unpersuasive because they were not supported by and were inconsistent with the objective medical evidence in the record (Tr. 46). Yalung-Almodiel's opinion was not supported by her own treatment notes. For example, regarding the physical limitations, Plaintiff reported pain relief from over-the-counter medication, exercise, and physical therapy and Yalung-Almodiel noted normal physical exams (Tr. 613, 627, 635). Moreover, X-rays of the right shoulder revealed an old right humeral fracture (Tr. 561). An MRI of the right shoulder

showed moderate supraspinatus and subscapularis tendinosis with tendon fraying; mild to moderate glenohumeral joint with posterosuperior labral degenerative tear; and an old, healed referral neck impacted fracture (Tr. 589). Thus, the RFC regarding Plaintiff's physical limitations is supported by substantial evidence.

The Appeals Council also found that the objective medical evidence in the record did not support the severity of Plaintiff's depression and bipolar disorder (Tr. 44). Christine Barnett, APRN submitted multiple medical opinions. On October 29, 2018 Barnett opined that Plaintiff had an upcoming appointment for close monitoring and continuation of care because Plaintiff was currently having an exacerbation of symptoms and he did not feel that he was able to currently work (Tr. 526-29). On August 26, 2019, Barnett opined that Plaintiff was unable to "effectively function in day to day life" (Tr. 575-76). Barnett also opined that Plaintiff's mental illness was an ongoing lifetime condition with periods of remission and he continued to experience exacerbated symptoms that inhibited his ability to function in a working environment (Tr. 575). On September 23, 2019 Barnett noted that Plaintiff had an upcoming appointment for close monitoring and continuation of care, and that Plaintiff reported being homeless since August 2019 (Tr. 579-83). Finally, on July 7, 2020, Barnett opined that based on her clinical findings during a recent evaluation, Plaintiff was presently experiencing an exacerbation of symptoms that prevented him from being able to effectively function in day-to-day life. (Tr. 831).

The Appeals Council found Barnett's opinions unpersuasive, reasoning that her opinion was unsupported by and inconsistent with the objective medical evidence in the record (Tr. 47). The Appeals Council also reasoned that Plaintiff reported improvement to his symptoms with medication (Tr. 45). Thus, in formulating Plaintiff's RFC, the Appeals Council concluded that Plaintiff was capable of simple tasks typical of unskilled occupations with no production rate pace work with only occasional interaction with supervisors, co-workers, and the public (Tr. 47).

In finding Barnett's opinion unpersuasive, the Appeals Council noted that Plaintiff never required inpatient psychiatric hospitalization (Tr. 44). Rather the Appeals Council found that Plaintiff began outpatient mental health treatment in June 2018 with Christine Barnett, APRN (Tr. 44, 515-19). Barnett reported that Plaintiff appeared friendly, communicative and unhappy (Tr. 44, 517). Plaintiff's speech was normal in rate, volume, and articulation; his speech was coherent and spontaneous; his language skills were intact; he showed signs of depression and his affect was congruent with mood; his association was intact and logical; there were no apparent signed of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process; his associations were intact, thinking was logical, and thought content appeared appropriate; he denied suicidal or homicidal ideation; cognitive functional and fund of knowledge were intact and age appropriate; short and long-term memory were intact, as was ability to abstract and do arithmetic calculations; he was fully oriented; his vocabulary and fund of

knowledge indicated cognitive functioning in the normal range; insight into problems and judgment appeared fair; there were no signs of anxiety; he had a normal attention span; his behavior in the session was cooperative with no gross behavioral abnormalities; and he exhibited no signs of withdrawal or intoxication (Tr. 45, 517-18). These findings were generally the same throughout Barnett's treatment notes of Plaintiff (Tr. 520, 500, 503, 506, 509, 512, 520, 652, 655, 658, 661, 664, 667, 671, 673, 676, 679, 682, 686, 812, 816, 840, 844, 847).

On June 26, 2018, Plaintiff sought outpatient mental health treatment with Barnett (Tr. 515). Plaintiff reported increased depression over several months and stressors of living with his father and the pressure to find a job (Tr. 515). Plaintiff also reported disrupted sleep and no motivation or energy (Tr. 515). Barnett diagnosed Plaintiff with major depressive disorder, recurrent, moderate and prescribed an anti-depressant (Tr. 518). On July 19, 2018, Plaintiff reported increased agitation, irritability, crying spells, and dizziness since starting the anti-depressant medication (Tr. 506). Barnett modified Plaintiff's medications by replacing the anti-depressant and starting a new insomnia medication (Tr. 507). On July 31, 2018, Plaintiff reported no change in depressive symptoms (Tr. 520). He reported intolerable side effects of trembling and dry mouth as a result of the prescribed anti-depressant (Tr. 520). Plaintiff also reported that the insomnia medication was not effective as he was only sleeping four hours a night (Tr. 520). Plaintiff continued to report racing thoughts and frequent crying (Tr. 520). Barnett modified Plaintiff's medication by discontinuing the previously prescribed anti-

depressant and insomnia medication and starting a new anti-depressant and mood stabilizing medication (Tr. 521). On August 16, 2018, Plaintiff reported slight improvement with depression and sleep although he was still only sleeping four to five hours per night (Tr. 500). Plaintiff also reported seeing shadow people at night (Tr. 500). Barnett modified his medication, decreasing his depression medication and increasing his mood stabilization medication (Tr. 501).

On September 4, 2018, Plaintiff reported ongoing anxiety, only sleeping two hours per night and seeing shadow people out of the corner of his eye (Tr. 512). Barnett increased his mood stabilization medication (Tr. 513). On October 1, 2018, Plaintiff reported ongoing depression and only sleeping two to three hours per night (Tr. 509). Plaintiff also reported seeing shadows from the corner of his eye and racing thoughts (Tr. 509). As a result, Barnett increased his mood stabilization medication (Tr. 510). On October 29, 2018, Plaintiff reported no change in symptoms although he reported crying daily and unable to sleep more than two to four hours per night (Tr. 503). Barnett noted that Plaintiff had been found sleeping in the waiting room (Tr. 503). Plaintiff also reported still seeing shadows (Tr. 503). Barnett once again modified his medications by increasing his insomnia medication (Tr. 505). On November 26, 2018, Plaintiff reported ongoing difficulty falling asleep and staying asleep at night, but also reported sleeping during the day (Tr. 688). Plaintiff reported some improvement with daily anxiety after increasing his medication but had ongoing feelings of depression with frequent crying (Tr. 688). Barnett did not adjust his medications during this visit (Tr. 689). On December 19,

2019, Plaintiff reported only sleeping two to three hours per night and sometimes not getting any sleep, which lead him to see shadow people (Tr. 685). Plaintiff also reported ongoing mild depression and anxiety (Tr. 685). Barnett modified Plaintiff's insomnia medication (Tr. 686). On January 16, 2019, Plaintiff reported ongoing insomnia and side effects from previous medication (Tr. 682). Plaintiff also reported seeing shadows at times and increased feelings of hopelessness due to having been denied disability benefits and due to his relationship with his father (Tr. 682). Barnett changed Plaintiff's insomnia medication (Tr. 682).

On February 13, 2019, Plaintiff reported depression with frequent crying, low motivation and hopelessness (Tr. 679). Plaintiff also reported getting one to two hours of sleep per night, in addition to visual hallucinations of shadow people (Tr. 679). Barnett changed Plaintiff's insomnia medication and started another medication for depression and sleep (Tr. 680). On March 11, 2019, Plaintiff reported having to increase his insomnia medication in order to help him sleep approximately four hours per night (Tr. 676). Once he ran out of the insomnia medication, he did not sleep more than several hours (Tr. 676). Plaintiff also reported seeing shadow people when he does not sleep (Tr. 676). Plaintiff continued to report daily depression with frequent crying (Tr. 676). As a result, Barnett decreased his mood stabilization medication, and increased his insomnia and depression medications (Tr. 677). On April 8, 2019, Plaintiff reported no improvement with depression along with low motivation, low energy, and frequent crying (Tr. 673). He expressed that his father's emotional abuse was hindering his

progress, but he had no other place to live and did not feel that he was able to work (Tr. 673). Plaintiff also reported some improvement in his insomnia, now sleeping approximately four hours per night (Tr. 673). Barnett changed his depression medication and decreased his mood stabilization medication (Tr. 674). On May 8, 2019, Plaintiff reported ongoing depression and crying spells and requested that his insomnia medication be tapered off on the request of a pain specialist due to potentially having shoulder surgery (Tr. 670). On June 5, 2019, Plaintiff reported stopping one of his medications due to throbbing headaches and reported ongoing depression (Tr. 667). Plaintiff also requested to resume medication to treat his insomnia (Tr. 667). As a result, Barnett changed Plaintiff's depression medication (Tr. 668). On July 1, 2019, Plaintiff reported no change in mood and continued to report depressive symptoms along with insomnia, excessive energy, and seeing shadows (Tr. 664). Plaintiff reported still living with his father, who he reported to be verbally and mentally abusive (Tr. 664). Barnett added a new mood stabilization medication and removed one of his anti-depressants (Tr. 665-66).

On July 29, 2019, Plaintiff reported no change in mood and depression (Tr. 661). Plaintiff reported an episode with hypomanic symptoms that lasted days and reported receiving little sleep – about two hours per night (Tr. 661). Barnett changed his insomnia medication and increased his mood stabilization medication (Tr. 662). On August 26, 2019, Plaintiff reported that he was kicked out of his father's home and was currently homeless (Tr. 658). Plaintiff reported that although he was homeless, he felt better since not being in an abusive environment at his father's

home (Tr. 658). Plaintiff reported ongoing depression and sleep issues (Tr. 658). Barnett modified his insomnia medication (Tr. 659). On September 23, 2019, Plaintiff reported having no change in mood and chronic dysphoria secondary to him being homeless and having no income (Tr. 655). He reported continued fragmented sleep (Tr. 655). Barnett made no adjustment to his medications (Tr. 656). On December 2, 2019, Plaintiff continued to report ongoing depression with low mood, low motivation, poor sleep, and homelessness – describing his status as "terrible" (Tr. 652). Plaintiff expressed optimism about his upcoming disability case and his plan to move to Florida eventually to be closer to friends (Tr. 652). As a result, Barnett increased his mood stabilization medication (Tr. 654). On January 7, 2020, Plaintiff reported ongoing mild depression with crying episodes, but reported optimism that his disability benefits case would be granted (Tr. 819). Plaintiff reported being stable with no significant mood episodes and some side effects from his mood stabilization medication (Tr. 819). As a result, Barnett decreased Plaintiff's mood stabilization medication (Tr. 821).

On February 25, 2020, Plaintiff reported ongoing depression and anxiety due to his continued homelessness and having no income (Tr. 816). Plaintiff continued to report poor sleep (Tr. 816). Plaintiff also reported feeling optimistic and hopeful that he would receive disability benefits (Tr. 816). Moreover, Plaintiff reported that his medications were still helpful (Tr. 816). Barnett did not adjust Plaintiff's medication during this visit (Tr. 818). On April 13, 2020, Plaintiff reported difficulty sleeping, further exasperated by his continuing homelessness (Tr. 812). Plaintiff

reported feeling frustrated and depressed, but hopeful that his disability benefits case would be rescheduled (Tr. 812). Barnett did not adjust Plaintiff's medication during this visit (Tr. 814). On May 12, 2020, Plaintiff reported not sleeping and ongoing contact anxiety due to concerns over his disability benefits case (Tr. 847). Barnett did not adjust Plaintiff's medication during this visit (Tr. 849). On June 9, 2020, Plaintiff reported not sleeping and difficulty in finding a place to sleep and being comfortable due to being homeless (Tr. 844). His disability benefits case would be heard soon, and he planned to move to Florida shortly thereafter (Tr. 844). Plaintiff also reported ongoing mild depression and anxiety due to his living situation (Tr. 844). Barnett did not adjust Plaintiff's medication during this visit (Tr. 846). On July 7, 2020, Plaintiff reported that he was "moving to Florida on Monday" to live with a friend and to be closer to other family (Tr. 840). He reported ongoing chronic depression but coping well (Tr. 840). Plaintiff reported that his homelessness was his primary stressor, but he was optimistic about his move and starting anew (Tr. 840). Barnett did not adjust Plaintiff's medication during this visit (Tr. 842).

Although Barnett changed or adjusted Plaintiff's medications on multiple occasions during the beginning of Plaintiff's treatment, the general trend was in favor of decreasing or maintaining medication treating Plaintiff's depression and mood, which demonstrates that Plaintiff's symptoms were not as severe as Barnett opined. Moreover, although Plaintiff's reports of improvements to his symptoms appear to be in passing and not directly linked to his medications, they stand in contrast to Barnett's normal mental status exams. Therefore, the Appeals Council

did not err in finding Barnett's medical opinions regarding Plaintiff's inability to effectively function in day-to-day life unpersuasive.

The Appeals Council relied on these records, in addition to other treatment notes, in also finding unpersuasive the medical opinions of Plaintiff's therapist, Sophie Swearingen, and the state agency psychological consultants (Tr. 47). On January 4, 2019, Swearingen opined that she found Plaintiff cooperative, engaging, and that he was making steady gains in therapy (Tr. 565-68). In March and July 2019, Swearingen opined that Plaintiff continued to report ongoing symptoms of crying spells, distractibility, poor concentration, visual hallucinations, forgetfulness, and difficulty completing tasks, and was homeless as a result (Tr. 567, 573). By September 2019, Swearingen opined that due to his homelessness, Plaintiff's ability to function in day-to-day life was impaired (Tr. 577-8). Then, in February and June 2020, Swearingen opined that Plaintiff was unable to work (Tr. 773, 824). Additionally, the state agency consultants both opined that Plaintiff's depression was non-severe and caused no more than mild limitations (Tr. 110-11, 120-21, 135-36, 147-48). However, the record demonstrates that Plaintiff regularly reported depressive symptoms but consistently received treatment resulting in stabilizing or improving symptoms and normal mental status exams.

Moreover, a physician's opinion as to what a claimant can still do despite his or her impairments may differ from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 404.1513(b) & (c), 404.1545, 404.1546, 416.913(b) & (c), 416.945, 416.946; Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (S.S.A. July 2,

1996). Therefore, the Appeals Council did not err in finding unpersuasive the medical opinions of Plaintiff's therapist and the state agency psychological consultants. Although the Appeals Council did not specifically rely on a medical opinion regarding Plaintiff's specific limitations in the RFC, the RFC is supported by substantial evidence in the record in that the Appeals Council relied on Plaintiff's treatment records and the medical record as a whole. Plaintiff has failed to show evidentiary gaps that would have necessitated the Appeals Council to further develop the record.

For the foregoing reasons, the Appeals Council applied the correct legal standards, and the Appeals Council's decision is supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 1st day of December, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record